MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
ORLANDO XOCUA DE LA CRUZ and JOSE
MIGUEL GONZALEZ CONOR , *individually*
*and on behalf of others similarly situated,*

|  |  |
|---|---|
| *Plaintiffs*, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER** |
| TJ ALVAREZ CORP.  (D/B/A IL CARINO RESTAURANT) and JULIO ALVAREZ, | **29 U.S.C. § 216(b)** **ECF Case** |
| *Defendants.* | |

------------------------------------------------------X

Plaintiffs Orlando Xocua de la Cruz and Jose Miguel Gonzalez Conor , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against  Tj Alvarez Corp. (d/b/a Il carino Restaurant), ("Defendant Corporation") and Julio Alvarez , ("Individual Defendant"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.     Plaintiffs are former employees of Defendants Tj Alvarez Corp. (d/b/a Il carino Restaurant) and Julio Alvarez.

2.      Defendants own, operate, or control an Italian Restaurant, located at 1710 2nd Avenue, New York, New York 10128 under the name "Il carino Restaurant".

3. Upon information and belief, individual Defendant Julio Alvarez , serve or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operates or operated the restaurant as a joint or unified enterprise.

4. Plaintiffs were employees of Defendants.

5. Plaintiffs were employed as delivery workers at the restaurant located at 1710 2nd Avenue, New York, New York 10128.

6. Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing food and salads, recycling bottles, taking out the trash, cleaning the kitchen, patios, refrigerator, bathroom  and the basement, sweeping, mopping, peeling and cleaning vegetables, preparing oysters and assisting in the kitchen dishwashing (hereafter the "non-tipped duties").

7. At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

8. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9. Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10. Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credit rate (which they still failed to do).

14.     In addition, defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an Italian Restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES
### *Plaintiffs*

21.     Plaintiff Orlando Xocua de la Cruz ("Plaintiff Xocua " or "Mr. Xocua") is an adult individual residing in Bronx County, New York.

22.     Plaintiff Xocua  was employed by Defendants at Il carino Restaurant from approximately October 2020 until on or about December 2020 and from approximately March 2021 until on or about May 2021.

23.     Plaintiff Jose Miguel Gonzalez Conor ("Plaintiff Gonzalez" or "Mr. Gonzalez ") is an adult individual residing in queens County, New York.

24.     Plaintiff Gonzalez was employed by Defendants at Il Carino Restaurant from approximately August 1, 2020 until on or about May 16, 2021.

*Defendants*

25.     At all relevant times, Defendants owned, operated, or controlled an Italian Restaurant, located at 1710 2nd Avenue, New York, New York 10128 under the name "Il carino Restaurant".

26.     Upon information and belief, Tj Alvarez Corp. (d/b/a Il carino Restaurant) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1710 2nd Avenue, New York, New York 10128.

27.     Defendant Julio Alvarez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Julio Alvarez is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Julio Alvarez possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

28.     Defendants operate an Italian Restaurant located in the Upper East Side section of Manhattan in New York City.

29.     Individual Defendant, Julio Alvarez, possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporation, and controls significant functions of Defendant Corporation.

30.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

32.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq* and the NYLL.

33.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

34.     Upon information and belief, Individual Defendant Julio Alvarez operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for his own benefit as the sole or majority shareholder,

    e)  operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f)   intermingling assets and debts of his own with Defendant Corporation,

g)   diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

35.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

36.     In each year from 2020 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

38.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

39.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Orlando Xocua de la Cruz*

40.     Plaintiff Xocua  was employed by Defendants from approximately October 2020 until on or about December 2020 and from approximately March 2021 until on or about May 2021.

41.     Defendants ostensibly employed Plaintiff Xocua as a delivery worker.

42.     However, Plaintiff Xocua was also required to spend a significant portion of his work day performing the non-tipped duties described above.

43.     Although Plaintiff Xocua ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

44.     Plaintiff Xocua  regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

45.     Plaintiff Xocua's  work duties required neither discretion nor independent judgment.

46.     From approximately October 2020 until on or about December 2020 and from approximately March 2021 until on or about May 2021, Plaintiff Xocua  worked from approximately 5:00 p.m. until on or about 11:30 p.m., Mondays and Tuesdays, from approximately 3:00 p.m. until on or about  11:30 p.m. on Wednesdays, and from approximately 5:00 p.m. until on or about 10:30 p.m., Fridays and Saturdays (typically 32.5 hours per week).

47.     From approximately October 2020 until on or about December 2020 and from approximately March 2021 until on or about May 2021, Defendants paid Plaintiff Xocua  his wages in a combination of check and cash.

48.     From approximately October 2020 until on or about December 2020, Defendants paid Plaintiff Xocua  a fixed salary of $270 per week .

49.     From approximately March 2021 until on or about May 2021, Defendants paid Plaintiff Xocua  a fixed salary of $200 per week .

50.     Defendants never granted Plaintiff Xocua  any breaks or meal periods of any kind.

51.     Plaintiff Xocua  was never notified by Defendants that his tips were being included as an offset for wages.

52.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Xocua's wages.

53.     Defendants withheld a portion of Plaintiff Xocua's tips; specifically, Defendants withheld a percentage of Plaintiff Xocua's tips and shared these tips with the cooks.

54.     Plaintiff Xocua was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

55.     Defendants required Plaintiff Xocua to sign a document in order to release his weekly pay.

56.     Specifically, it was a notebook that only had Plaintiff Xocua's name on a page.

57.     On one occasion, Defendants required Plaintiff Xocua to sign a document, which falsely stated that he was paid on an hourly basis as opposed to a fixed salary .

58.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Xocua regarding overtime and wages under the FLSA and NYLL.

59.     Defendants did not provide Plaintiff Xocua an accurate statement of wages, as required by NYLL 195(3).

60.     In fact, Defendants provided Plaintiff Xocua with a pay stub that falsely stated they were paying him $80 per week.

61.     Defendants did not give any notice to Plaintiff Xocua , in English and in Spanish (Plaintiff Xocua's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

62.     Defendants required Plaintiff Xocua to purchase "tools of the trade" with his own funds—including one electronic bicycle.

*Plaintiff Jose Miguel Gonzalez Conor*

63.     Plaintiff Gonzalez was employed by Defendants from approximately August 1, 2020 until on or about May 16, 2021.

64.     Defendants ostensibly employed Plaintiff Gonzalez as a delivery worker.

65.     However, Plaintiff Gonzalez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

66.     Although Plaintiff Gonzalez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

67.     Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

68.     Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

69.     Throughout his employment with Defendants, Plaintiff Gonzalez regularly worked in excess of 40 hours per week.

70.     From approximately August 2020 until on or about May 16, 2021, Plaintiff Gonzalez worked from approximately 3:00 p.m. until on or about 10:00 p.m. to 11:00 p.m. , Mondays through Thursdays and from approximately 3:00 p.m. until on or about 11:00 p.m., Fridays, Saturdays and Sundays (typically 52 to 56 hours per week).

71.     From approximately August 1, 2020 until on or about May 16, 2021, Defendants paid Plaintiff Gonzalez his wages in a combination of check and cash.

72.     From approximately August 1, 2020 until on or about May 16, 2021, Defendants paid Plaintiff Gonzalez $8.00 per hour .

73.     Plaintiff Gonzalez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

74.     For example, Defendants required Plaintiff Gonzalez to work an additional hour past his scheduled departure time four days a week, and did not pay him for the additional time he worked.

75.     In addition, Defendants did not pay Plaintiff Gonzalez any wages for 2 days when he performed carpentry work from 10:00 a.m. to 10:00 p.m. .

76.     Defendants never granted Plaintiff Gonzalez any breaks or meal periods of any kind.

77.     Plaintiff Gonzalez was never notified by Defendants that his tips were being included as an offset for wages.

78.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gonzalez's wages.

79.     Defendants withheld a portion of Plaintiff Gonzalez's tips; specifically, Defendants withheld a percentage of Plaintiff Gonzalez's tips and shared these tips with the cooks.

80.     Plaintiff Gonzalez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

81.     Defendants required Plaintiff Gonzalez to sign a document, in order to release his weekly pay.

82.     Specifically, it was a notebook that only had Plaintiff Gonzlez's name and the amount he was being paid on a page.

83.     On one occasion, Defendants required Plaintiff Gonzalez to sign a document, the contents of which he was not allowed to review in detail.

84.     Defendants took improper and illegal deductions from Plaintiff Gonzalez's wages; specifically, Defendants deducted a sum of money  from Plaintiff Gonzalez's weekly wages because he accidentally had dropped some money on the way back from a delivery.

85.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

86.     Defendants did not provide Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

87.     Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88.     Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his own funds—including bicycle parts and monthly maintenance.

*Defendants' General Employment Practices*

89.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

90.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

91.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

92.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

93.     Defendants required Plaintiffs and all delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers. These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

94.     These Plaintiffs and all other tipped workers were paid at a rate that was lower than the required lower tip-credit rate by Defendants.

95.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

96.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

97.     Plaintiffs' and other delivery workers' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

98.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

99.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

100.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

101.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

102.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

103.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

104.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

105.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

106.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

107. Defendants required Plaintiffs to sign their name into a notebook which only had their name and the date, in order to release their wages.

108. On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

109. Plaintiffs were paid their wages in a combination of check and cash.

110. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

111. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

112. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

113. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

114. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

115.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

116.    Plaintiffs bring their FLSA minimum wage, overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA class members").

117.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

118.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

119.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

120.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

121.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

122.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

123.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

124.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

125.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

126.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

127.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

128.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

129.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

130.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

131.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

132.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

133.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

134.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

136.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

137.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

138.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

140.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

141.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

142.     With each payment of wages, Defendants failed to provide Plaintiffs (and the FLSA class MEMBERS ) with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer;

rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay and the number of regular hours worked, as required by NYLL 195(3).

143.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

144.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

145.    Defendants required Plaintiffs (and the FLSA class MEMBERS ) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles and helmets, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

146.    Plaintiffs (and the FLSA class MEMBERS ) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

147.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

148.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

149.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

150.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

151.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

152.     Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION
## OF THE NEW YORK LABOR LAW

153.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

154.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

155.     Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted a sum of money  from Plaintiff Gonzalez's weekly wages for money  he accidentally dropped on his way back from a delivery.

156.     The deductions made from Plaintiffs' wages were not authorized or required by law.

157.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

158.     Plaintiffs were damaged in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**

**VIOLATION OF THE TIMELY PAYMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

159.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

160.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

161.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)       Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)       Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)       Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)       Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)       Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)       Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)       Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)       Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as applicable

(n)       Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Awarding Plaintiffs and the FLSA class MEMBERS  pre-judgment and post-judgment interest as applicable;

(q)       Awarding Plaintiffs and the FLSA class MEMBERS  the expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
         June 16, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
         Michael Faillace [MF-8436]
         60 East 42nd Street, Suite 4510
         New York, New York 10165
         Telephone: (212) 317-1200
         Facsimile: (212) 317-1620
         *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 25, 2021

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose  Miguel  Gonzalez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      25 de mayo 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 25, 2021

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Orlando Xocua de la Cruz

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       25 de mayo 2021

*Certified as a minority-owned business in the State of New York*